**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Tipp,<br><br>        Plaintiff,<br><br>v.<br><br>Adeptus Health Incorporated, et al.,<br><br>        Defendants. | No. CV-16-02317-PHX-DGC<br><br>**ORDER** |

Plaintiff Michelle Tipp has sued Defendants Adeptus Health Incorporated; Adeptus Health Phoenix Holdings, LLC; Adeptus Health Management, LLC; and AGH Laveen, LLC, for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Doc. 24. The Court stayed the case against all Defendants except AGH Laveen ("Defendant") because of an ongoing bankruptcy proceeding. Doc. 69. Plaintiff and Defendant separately move for summary judgment on Plaintiff's Title VII claims. Docs. 76, 78. Plaintiff also seeks a spoliation sanction. Doc. 78. The motions are fully briefed, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For the reasons stated below, the Court will deny both motions.

**I.  Background.**

The following facts are undisputed. Defendant is an Arizona-based hospital where Plaintiff began working in January 2015 as a permanent, full-time case manager. Doc. 77

¶¶ 5, 23; Doc. 87 ¶¶ 5, 23. Plaintiff's supervisor was Kimothy Sparks. Doc. 77 ¶ 27; Doc. 87 ¶ 27. In June 2015, Plaintiff complained to Defendant's CEO, Robert Honeycutt, about Mr. Sparks's unresponsiveness. Doc. 77 ¶ 31; Doc. 87 ¶ 31. Mr. Honeycutt spoke with Mr. Sparks to address the problem. Doc. 77 ¶ 32; Doc. 87 ¶ 32. In August 2015, Plaintiff again complained to Mr. Honeycutt about Mr. Sparks's unresponsiveness. Doc. 77 ¶ 33; Doc. 87 ¶ 33. In both August and September 2015, Plaintiff asked that Mr. Honeycutt consider transferring her to a different supervisor. Doc. 77 ¶¶ 34-35; Doc. 87 ¶¶ 34-35.

On October 12, 2015, human resources representative Andrea Scott interviewed Plaintiff about her complaint and transfer request. Doc. 77 ¶ 36; Doc. 87 ¶ 36. Plaintiff conveyed that Mr. Sparks was not communicating well or addressing her professional needs, which affected her performance. Doc. 77 ¶ 37; Doc. 87 ¶ 37. Plaintiff made no allegation of sexual harassment against Mr. Sparks. Doc. 77 ¶ 39; Doc. 87 ¶ 39.

After an upsetting interaction with Mr. Sparks on October 16, 2015, Plaintiff offered her resignation to Mr. Honeycutt. Doc. 79 ¶ 31; Doc. 87 ¶¶ 96-97; *see* Doc. 81 (failing to controvert). Mr. Honeycutt refused to accept it, stating that Plaintiff was an asset to the organization. *Id.*

On October 22, 2015, Ms. Scott informed Plaintiff that she would remain under the supervision of Mr. Sparks, who had promised to improve his supervision. Doc. 77 ¶ 40; Doc. 87 ¶ 40. Upset by this decision, Plaintiff excused herself from the meeting with Ms. Scott. Doc. 79 ¶ 35; Doc. 87 ¶ 101; *see* Doc. 81 (failing to controvert). Later that day, Plaintiff met with Ms. Scott again to allege – for the first time – that Mr. Sparks sexually harassed her. Doc. 77 ¶ 41; Doc. 87 ¶ 41. To support her allegation, Plaintiff shared text messages she received from Mr. Sparks and described some of his conduct. Doc. 79 ¶¶ 36-37; Doc. 87 ¶ 102; *see* Doc. 81 (failing to controvert). Ms. Scott informed Plaintiff that she should work from home while Ms. Scott investigated the complaint. Doc. 79 ¶ 38; Doc. 87 ¶ 103; *see* Doc. 81 (failing to controvert). Ms. Scott told Plaintiff that she would call her with an update on October 23, 2015. *Id.*

Ms. Scott interviewed Mr. Sparks and Plaintiff's co-workers. *See* Doc. 79-1 at 63-68. These interviews suggested that Mr. Sparks slept at Plaintiff's residence on two occasions, they shared weekly dinners together, and Plaintiff was known to joke about being pregnant with Mr. Sparks's child. *See id.*

At a meeting on October 26, 2015, Defendant's Vice President of Human Resources, Traci Bowen, informed Plaintiff that Mr. Sparks had been fired. Doc. 76-3 at 18-19; Doc. 87-1 ¶ 29. Ms. Bowen then explained that Plaintiff was likewise terminated because of her lack of transparency in making the sexual harassment complaint. Doc. 76-3 at 31-32; Doc. 87-1 ¶ 29.

**II. Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Preliminary Issues.**

**A. Defendant's Failure to Comply with Local Rule 56.1.**

Plaintiff's motion for summary judgment includes a separate statement of facts as required by Local Rule of Civil Procedure 56.1(a). Doc. 79. Defendant's response includes a supplemental statement of facts, but does not include a controverting statement

of facts as required by Local Rule 56.1(b). Doc. 81. Defendant has thus failed to controvert any of Plaintiff's factual assertions. Plaintiff asks the Court to treat the facts she asserts as admitted for purposes of her motion. Doc. 88 at 1-2. This Court has imposed such a sanction where the responding party fails to file any statement of facts whatsoever. *See Kizzee v. Walmart, Inc.*, No. CV10-0802-PHX-DGC, 2011 WL 3566881, at *2 (D. Ariz. Aug. 15, 2011). In this case, however, Defendant did offer supplemental facts (Doc. 81) and a comprehensive statement of facts – on the same issues – in support of its own motion (Doc. 77). In light of these submissions, the Court will not treat all of Plaintiff's factual assertions as admitted, but instead will look to Defendants' factual statements to determine whether Defendant has controverted specific factual assertions.

### B. Spoliation.

Plaintiff seeks a directed verdict or, alternatively, an adverse inference jury instruction, for Defendant's destruction of Ms. Scott's handwritten notes of her investigation. Doc. 78 at 6-9. On November 17, 2015, Plaintiff sent a litigation hold notice to Defendant. Doc. 79 ¶ 77; Doc. 79-2 at 16-20; *see* Doc. 81 (failing to controvert). On the following day, Ms. Bowen notified Mr. Honeycutt and Ms. Scott via email of the litigation hold. Doc. 79-2 at 22. She stated that they must "hold on to any files, notes or anything else related to [Plaintiff] and our investigation of her claim." *Id.*

Ms. Scott used a notebook to record notes during her various meetings as a human resources representative. Doc. 79-4 at 4. This notebook included, among other things, notes regarding Plaintiff's sexual harassment complaint. *See id.* at 4-5. Yet when Ms. Scott had used all of the remaining pages of the notebook in March, April, or May 2016, she shredded the notebook in violation of Defendant's duty to preserve. *Id.* Although she had converted her notes into a computerized report, Ms. Scott never photocopied or scanned the handwritten version before shredding it. *Id.*

"The failure to preserve [evidence], once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *Surowiec v. Capital Title*

*Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) (citation omitted). Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation. *Id.* A party seeking sanctions for spoliation of electronically stored information ("ESI") must address the factors set forth in Rule 37(e) of the Federal Rules of Civil Procedure. That rule, which was amended on December 1, 2015, identifies the circumstances under which various kinds of sanctions can be imposed for the loss of ESI. For spoliation of evidence other than ESI, such as in this case, the common law continues to control, and the party seeking sanctions must prove: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered, (2) the destruction or loss was accompanied by a culpable state of mind, and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought discovery of the evidence. *Surowiec*, 790 F. Supp. 2d at 1005 (internal citation omitted).

A related issue – prejudice resulting from loss of the evidence – is also relevant when addressing sanctions for the loss of non-ESI evidence. Although some courts have presumed prejudice upon a showing of bad faith or gross negligence, *see, e.g.*, *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 685 F. Supp. 2d 456, 467-68 (S.D.N.Y. 2010), other cases – the better-reasoned cases, in this Court's view – require a showing of actual prejudice, noting that such a showing "is an important check on spoliation allegations and sanctions motions," *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 616-18 (S.D. Tex. 2010).

Defendant concedes that it had an obligation to preserve Ms. Scott's handwritten notes. Doc. 80 at 6-8.

Plaintiff argues that the handwritten notes were relevant because they included contemporaneous impressions of Ms. Scott's investigation. Doc. 78 at 8-9; Doc. 88 at 4. Ms. Scott testified that the handwritten notes reflected "the entire investigation" into Plaintiff's claims, including witness interviews. Doc. 81-4 at 7-8. She testified that she created a typed "copy" of the notes before they were shredded, and that the typed version

included "everything that was in my handwritten notes." Doc. 81-5 at 10, 12. Defendant argues that the handwritten notes are not relevant because Plaintiff has received the typed version – the same version on which Ms. Bowen relied in making the termination decision. Doc. 80 at 7-8. The Court does not agree. Ms. Scott's assertion that her typed notes include a complete copy of her handwritten notes is not an assertion Plaintiff must accept on faith, without testing against the original notes. The handwritten notes may have included additional or inconsistent information that would be relevant to this case.

With respect to culpability, Plaintiff contends that Defendant's failure to preserve the handwritten notes or discipline Ms. Scott for destroying them constitutes bad faith (Doc. 78 at 9; Doc. 88 at 4-5), but the Court is not persuaded. Defendant issued a litigation hold notice that included notes. Doc. 79-2 at 22; Doc. 81-5 at 11. When asked why she destroyed her notebook of handwritten notes, Ms. Scott testified:

> Because it was a running log, it didn't occur to me when I shredded it, when it got full that – of this e-mail [the litigation hold notice] because I forgot it was even sent at that point, and in addition, I had already typed up everything that was in my handwritten notes into the investigation record.

Doc. 81-5 at 11-12. Although disjointed, this answer suggests that Ms. Scott forgot about the litigation hold and that it did not occur to her that she should retain the handwritten notes once they had been typed. While such conduct does not excuse Defendant's failure to preserve, neither does it show bad faith or intentional destruction of evidence. At most, it would seem to constitute negligence or gross negligence.[1]

Finally, Plaintiff has not provided clear evidence of prejudice. Although the handwritten notes were relevant and may have included additional or inconsistent information, the only evidence before the Court is Ms. Scott's testimony that her typed notes included everything in the handwritten notes. Plaintiff has been deprived of the

---

[1] The Court is not persuaded that Defendant's failure to discipline Ms. Scott for destroying the notes constitutes bad faith. Doc. 88 at 3-4. The relevant inquiry is Defendant's intent when the notes were destroyed, and the only evidence in this case suggests that Defendant, which had issued a litigation hold, was unaware of the notes' destruction at that time. Although the conduct and intent of Ms. Scott are also attributable to Defendant, the evidence discussed above suggests that she was at most negligent or grossly negligent.

opportunity to test this assertion by comparison to the handwritten notes, but the Court cannot conclude from the evidence that Plaintiff has lost critically important information.

The Court will not grant a directed verdict as requested by Plaintiff. The Court previously has concluded that, in the Ninth Circuit, "case-terminating sanctions require conduct akin to bad faith." *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1113 (D. Ariz. 2014). Plaintiff has not shown that Defendant or Ms. Scott acted in bad faith. Plaintiff has provided no basis for disbelieving Ms. Scott's testimony that she shredded the notes because she forgot about the litigation hold, her notebook was full, and she had transferred everything in the handwritten notes to her typed notes.

Nor can the Court conclude at this time that an adverse inference instruction is warranted. As recently recognized in the amendment of Rule 37(e), an adverse inference instruction is a strong sanction that should be imposed only in appropriate cases. The Advisory Committee Note to Rule 37(e)(2) explains:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Other courts have approved of this reasoning. *See Equal Emp't Opportunity Comm'n v. JetStream Ground Servs., Inc.*, No. 17-1003, 2017 WL 6614481, at *5 (10th Cir. Dec. 28, 2017). In light of this rationale, the revised version of Rule 37(e) limits adverse inference instructions to settings where the party that lost the evidence "acted with the intent to deprive another party of the information's use in the litigation[.]" Fed. R. Civ. P. 37(e)(2).

Rule 37(e) does not govern this case because the lost evidence was not ESI, but its helpful rationale counsels caution in imposing an adverse inference instruction. The

Court therefore reaches this conclusion: Plaintiff will be permitted at trial to present evidence of Ms. Scott's destruction of the handwritten notes and, at a minimum, to argue to the jury that the notes could have been helpful to her case. The Court will decide at trial, or at the final pretrial conference if possible, whether it will give an adverse inference instruction in light of all the evidence and, if so, the precise form of that instruction.

**IV. Title VII Claims.**

Plaintiff alleges three Title VII claims against Defendant: gender discrimination, hostile work environment, and retaliation. Doc. 24 ¶¶ 35-43. Each party moves for summary judgment on these claims. Docs. 76, 78.

**A. Gender Discrimination.**

An employer violates Title VII when it subjects an employee to disparate treatment. *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 690 (9th Cir. 2017). The Ninth Circuit has explained:

> To show a prima facie case of disparate treatment, a plaintiff must offer evidence that gives rise to an inference of unlawful discrimination. One way to establish an inference of discrimination is by satisfying the prima facie elements from *McDonnell Douglas*: (1) the plaintiff belongs to a protected class, (2) [she] was performing according to [her] employer's legitimate expectations, (3) [she] suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.
>
> Under the *McDonnell Douglas* burden-shifting framework, when the plaintiff demonstrates [her] prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. If the defendant meets this burden, then the plaintiff must . . . raise a triable issue of material fact as to whether the defendant's proffered reasons are mere pretext for unlawful discrimination.

*Id.* at 690-91 (internal quotation marks and citations omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Alternatively, "a plaintiff may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." *Reynaga*, 847 F.3d at 691 (internal quotation marks omitted).

The parties do not dispute that Plaintiff belonged to a protected class and suffered an adverse employment action. They dispute whether Plaintiff performed according to Defendant's legitimate expectations and whether any similarly situated employees were treated more favorably.

### 1. Plaintiff's Performance.

Defendant argues that Plaintiff cannot establish this element. Doc. 76 at 5. It asserts that its policies require employees to be forthcoming with all relevant details when making misconduct complaints. *Id.* at 8-9. Plaintiff's sexual harassment complaint failed to meet its legitimate expectations, Defendant argues, because she chose not to share details showing that she might have participated in or welcomed some of the alleged harassment. *Id.* at 5-8. What is more, Defendant contends that Plaintiff's complaint was late – she should have revealed the alleged sexual harassment when she first complained about Mr. Sparks in June. *Id.*

Plaintiff argues that this element is established by undisputed facts. Doc. 78 at 11. She argues that her performance was adequate because senior management considered her an "asset" to the company. *Id.*; Doc. 86 at 16. And to the extent her complaint was deficient, Plaintiff argues, the fault lies with Ms. Scott, who abruptly ended their meeting despite Plaintiff's insistence that she had more to share. *Id.*

The Court concludes that a dispute of fact prevents summary judgment on this basis. Each side disagrees with the facts supporting the other side's arguments. Doc. 76 at 5-10; Doc. 86 at 4-8, 16.

### 2. More Favorable Treatment for Similarly Situated Individuals.

The parties also dispute whether Defendant treated similarly situated employees more favorably. Doc. 76 at 10; Doc. 78 at 11. Plaintiff asserts three instances of disparate treatment: (1) a male nurse who sent inappropriate text messages to a female contractor was only instructed to stop, but Plaintiff was fired for making a complaint (Doc. 78 at 11; Doc. 79-4 at 61-66; Doc. 86 at 17); (2) the same male nurse received an opportunity to respond to the allegations, but Plaintiff received no opportunity to address

- 9 -

her lack of transparency (Doc. 79-4 at 66; Doc. 86 at 17); and (3) Mr. Honeycutt and Mr. Sparks were not disciplined for their failure to report their sleepovers, yet Plaintiff was fired for the same conduct (Doc. 78 at 11; Doc. 79-3 at 38-42; Doc. 86 at 16-17).

Defendant disputes that these points represent disparate treatment of similarly situated individuals. Doc. 76 at 10; Doc. 80 at 9-10. Although the Court agrees that the record does not reveal a male employee who was treated more favorably after making a deficient misconduct complaint, Plaintiff need not do so. To satisfy this element of the prima facie case, Plaintiff may alternatively present evidence of circumstances that give rise to an inference of discrimination. *See Reynaga*, 847 F.3d at 691. Plaintiff presents evidence of three ways in which Defendant allegedly treated males more favorably than her, and this evidence creates a factual dispute that precludes summary judgment. *See id.* ("Roseburg is correct that there is no evidence in the record of similarly situated employees being treated more favorably in that precise manner. But there is sufficient evidence to give rise to an inference of discrimination based on two non-Hispanic employees (Branaugh and Mike Martin) being treated more favorably than Efrain.").

### 3. Non-Discriminatory Reason for Plaintiff's Termination.

Defendant contends that it had a legitimate, non-discriminatory reason to terminate Plaintiff's employment. Doc. 76 at 10-11. Specifically, Defendant states that it fired her for her lack of transparency in making the sexual harassment complaint. *Id.* Yet Plaintiff presents evidence that Defendant never allowed her to finish that complaint or address the alleged lack of transparency before firing her. Doc. 86 at 10-12, 17. A reasonable jury might conclude that Defendant's asserted reason for Plaintiff's termination is a pretext for discrimination.

### B. Hostile Work Environment.

To prevail on her hostile work environment claim, Plaintiff must show that (1) she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment." *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1065 (9th Cir. 2002) (en banc) (quoting *Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991)). The work environment "must be both objectively and subjectively offensive, one that a reasonable [woman] would find hostile or abusive, and one that the [plaintiff] in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

In assessing severity, courts look at all the circumstances, "including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 787-88 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998); *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001) (internal quotation marks omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (internal quotation marks omitted).

The Court finds disputes of material fact that prevent the entry of summary judgment on this claim. First, there is a dispute as to whether Mr. Sparks's sexual harassment was unwelcome. Defendant presents evidence that Plaintiff participated in some of the inappropriate communications (Doc. 76 at 12-13; Doc. 76-4 at 64-68; Doc. 76-6 at 120-149; Doc. 80 at 10-12), but Plaintiff testifies that she had – after consistent harassment – finally relented to working within this hostile environment (Doc. 87-1 ¶ 35).

Second, there is a genuine dispute as to whether Defendant can rely on the *Faragher*/*Ellerth* affirmative defense. *See Burlington Industries v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (collectively, *Faragher*/*Ellerth*). The Ninth Circuit has explained:

> Under *Faragher*/*Ellerth*, when an employee has been subjected to an unlawful "tangible employment action" by a supervisor, the employer may be held liable without more; when the employee has been unlawfully harassed, but there has been no "tangible employment action," the employer may avoid liability by proving the defense of "reasonable care."

*Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir. 2003). To establish reasonable care, Defendant must show: "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765.

Defendant contends that it exercised reasonable care because it established, communicated, and implemented anti-harassment policies. Doc. 77 ¶¶ 10-17; Doc. 80 at 12. These policies, according to Defendant, provided alternative reporting avenues for employees who wanted to report misconduct by their supervisors. Doc. 77 ¶ 12; Doc. 80 at 12. Plaintiff's unreasonable failure to use such an avenue, Defendant argues, left it unaware of Mr. Sparks's conduct until October 22, 2015. Doc. 76 at 13; Doc. 80 at 12. Once it did learn of Mr. Sparks's alleged sexual harassment, Defendant terminated him immediately. Doc. 76 at 13; Doc. 80 at 12.

Plaintiff counters with testimony that she was neither given a copy of Defendant's policies nor adequately informed of their content. Doc. 87-1 ¶¶ 4-9. What is more, Plaintiff testifies that she believed Mr. Sparks, as her supervisor, was her primary avenue for misconduct complaints. *Id.* ¶ 5. If she did not want to report to Mr. Sparks, she believed her only other option was Mr. Honeycutt, a close friend to Mr. Sparks who would have shared the nature of her complaint with Mr. Sparks. *Id.* Under these circumstances, Plaintiff contends, Defendant did not exercise reasonable care to communicate its policies and establish a framework for reporting misconduct. Doc. 78 at 13-15; Doc. 86 at 14-15. She argues that her failure to report the sexual harassment until October was therefore reasonable. Doc. 78 at 13-15; Doc. 86 at 14-15.

The Court finds two genuine disputes of material fact that preclude summary judgment. First, the parties dispute whether Defendant adequately communicated its anti-harassment policies. Second, the parties dispute whether it was reasonable for Plaintiff to withhold information about the sexual harassment until October.[2]

### C. Retaliation.

Title VII prohibits retaliation against an employee for opposing an unlawful employment practice or participating in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). A successful retaliation claim must establish that (1) the employee engaged in a protected activity, (2) the employer took an adverse employment action against the employee, and (3) the employer would not have taken the adverse employment action but for a design to retaliate. *Nilsson v. City of Mesa*, 503 F.3d 947, 953-54 (9th Cir. 2007); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (clarifying that employee must show "but for" causation). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for its actions." *Nilsson*, 503 F.3d at 954 (internal quotation marks omitted). If the defendant does so, the plaintiff must show that the articulated reason is a mere pretext. *Id.*

The parties do not dispute that Plaintiff's sexual harassment complaint constituted protected activity. Doc. 76 at 14-17; Doc. 78 at 16-17. Nor do they dispute that her termination was an adverse employment action. Doc. 76 at 14-17; Doc. 78 at 16-17. The only issues in dispute are causation and pretext.

### 1. Causation.

Title VII retaliation claims "must be proved according to traditional principles of but-for causation." *Nassar*, 133 S. Ct. at 2533. To establish causation, an employee must provide evidence, either direct or circumstantial, that the individuals responsible for the

---

[2] Defendant argues for the first time in its reply brief that Mr. Sparks's conduct was not so extreme as to alter the conditions of Plaintiff's employment. Doc. 89 at 8-10. The Court will not consider an argument made for the first time in a reply brief. *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007).

adverse employment action knew about the protected activity and intended to retaliate because of it.

"[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). The Ninth Circuit has "made clear that a specified time period cannot be a mechanically applied criterion, and ha[s] cautioned against analyzing temporal proximity without regard to its factual setting." *Fazeli v. Bank of Am., NA*, 525 F. App'x 570, 571 (9th Cir. 2013) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009)). Nonetheless, the Ninth Circuit "has generally required temporal proximity of less than three months between the protected activity and the adverse employment action for the employee to establish causation based on timing alone." *Mahoe v. Operating Eng'rs Local Union No. 3*, No. Civ. 13-00186 HG-BMK, 2014 WL 6685812, at *8 (D. Haw. Nov. 25, 2014) (collecting cases). This comports with Supreme Court precedent, which holds that the temporal proximity between the protected activity and the adverse employment action must be "very close" to support an inference of causation, and that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).

A dispute of material fact prevents the entry of summary judgment. Plaintiff contends that the timing of her termination – four days after filing her sexual harassment complaint – is sufficient to establish causation. Doc. 78 at 16-17; Doc. 86 at 9. Plaintiff also asserts that senior management considered her an "asset" to the company in the days before her complaint. Doc. 87-1 ¶¶ 13-14. Defendant admits, according to Plaintiff, that it would not have fired her but for her complaint. Doc. 78 at 17.

Defendant counters that these arguments miss the point – despite the timing and her job performance, Plaintiff filed a complaint without mentioning important details. Doc. 80 at 13. This lack of transparency, not the fact that she complained, caused her termination. Doc. 76 at 15-16; Doc. 80 at 13. Defendant asserts that it gave Plaintiff an

- 14 -

opportunity to address this lack of transparency on October 26, 2015. Doc. 76-3 at 15-32; Doc. 76-5 at 9-13. And Defendant presents evidence that it only made the final decision to terminate Plaintiff's employment when she failed to adequately address her lack of transparency. Doc. 76-3 at 29-32; Doc. 76-4 at 8; Doc. 76-5 at 9-13.

Yet Plaintiff testifies that she never had an opportunity to finish her complaint or address the alleged lack of transparency before her termination, even though she told Ms. Scott she had more to share. Doc. 87-1 ¶¶ 22, 24, 29. What is more, Ms. Scott's notes suggest that Defendant decided to terminate Plaintiff on October 23. Doc. 79-1 at 68. And Ms. Bowen drafted Plaintiff's severance agreement on October 25. *Id.* at 79. Disputes of material fact again prevent summary judgment.

### 2. Pretext.

As discussed above, Defendant claims to have a legitimate, non-discriminatory reason for Plaintiff's termination – her lack of transparency. Relying on many of the same arguments explained above, the parties dispute whether this reason is a pretext for discrimination. Doc. 76 at 16-17; Doc. 86 at 10-12.

An employee may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motive." *Vasquez*, 349 F.3d at 642.

Plaintiff presents specific and substantial evidence, in the form of her own testimony, that Defendant caused the lack of transparency by failing to afford her an opportunity to provide more information. Doc. 87-1 ¶¶ 22, 24, 29. She also presents evidence that Defendant's decision to terminate her was made before she could complete her complaint. Doc. 79-1 at 68, 79. This is sufficient evidence to create a factual question on pretext.

**IT IS ORDERED**:

1. Defendant's motion for summary judgment (Doc. 76) is **denied**.
2. Plaintiff's motion for summary judgment (Doc. 78) is **denied**.
3. The Court will set a final pretrial conference by separate order.

Dated this 17th day of January, 2018.

*David G. Campbell*
—————————————————
David G. Campbell
United States District Judge